IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAMES W. MOORE, et al.,

    Plaintiffs,

       v.

                                   CIVIL ACTION FILE
                                   NO. 1:19-CV-3296-TWT

CAYLEE NOGGLE,
Commissioner of the Georgia
Department of Community Health, in
her official capacity, et al.,

    Defendants.

## OPINION AND ORDER

This is a civil rights action. It is before the Court on the Defendants'
Renewed Motion to Dismiss the Plaintiffs' Second Amended Complaint [Doc.
101]. For the reasons set forth below, the Defendants' Renewed Motion to
Dismiss the Plaintiffs' Second Amended Complaint [Doc. 101] is GRANTED.

## I.   Background

The Plaintiffs, James Moore and John Panuska, were injured in
separate motor vehicle accidents and now live with significant disabilities that
require continuous care from medical professionals. (Second Am. Compl. ¶¶ 23,
37.) In the wake of these automobile accidents, the Plaintiffs received monetary
settlements, which were then placed into irrevocable special needs trusts ("the
Moore Trust" and "the Panuska Trust," or, collectively, "the Trusts"). (*Id.*
¶¶ 29, 43.) By placing money in the Trusts, the Plaintiffs have retained their

eligibility for government benefits, including Medicaid. (*Id.*) The Trusts pay for the Plaintiffs' care above what they receive from Medicaid, including private duty nursing care. (*Id.* ¶¶ 35, 49.)

"Medicaid is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals." *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990). States manage and administer their Medicaid programs through a single agency, and in the State of Georgia, that agency is the Department of Community Health ("DCH"). 42 U.S.C. § 1396a(a)(5); O.C.G.A. § 49-4-142(a). Under federal law, state programs must provide its beneficiaries with "medical assistance," consisting of certain mandatory and other optional services. 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a) (defining "medical assistance"). But "when a state elects to provide an optional service, that service becomes part of the state Medicaid plan and is subject to the requirements of federal law." *Tallahassee Mem'l Reg'l Med. Ctr. v. Cook*, 109 F.3d 693, 698 (11th Cir. 1997). Pursuant to a waiver from its federal counterpart, the Centers for Medicare and Medicaid Services ("CMS"), a state agency "may include as 'medical assistance' . . . home or community-based services." 42 U.S.C. § 1396n(c); 42 C.F.R. § 430.25(c)(2). In Georgia, one service provided pursuant to such a waiver is the Independent Care Waiver Program ("ICWP"), which "provides home and community-based services to people such as Plaintiffs with significant physical disabilities" as an alternative to long-

2

term care facilities. (Second Am. Compl. ¶ 1.)

The Medicaid Act places a variety of requirements on state plans for medical assistance, and two of these requirements are of particular importance to this case. Under 42 U.S.C. § 1396a(a)(3), the state must "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness[.]" Further, under § 1396a(a)(8), the state must "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals[.]"

The Plaintiffs allege that the Defendants, who serve DCH in various capacities, amended the ICWP in 2017 to include a new service called "Skilled Nursing Hourly." (*Id.* ¶ 2.)[1] Skilled Nursing Hourly is a type of private duty nursing service, which is provided to individuals "who require more individual

---

[1] Since this litigation began, there have been personnel changes at DCH. The Defendants currently are: Caylee Noggle, DCH Commissioner; Ryan Locke, Chief Health Policy Officer and Deputy Commissioner; Lynette Rhodes, Executive Director of Medical Assistance Plans Division; Brian Dowd, Deputy Executive Director of Medical Assistance Plans Division; and Catherine Ivy, Deputy Executive Director of Medical Assistance Plans Division. Ms. Noggle and Mr. Locke replaced Frank Berry and Blake Fulenwider, respectively, on July 1, 2021. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 1 n.1–2.) Therefore, Ms. Noggle and Mr. Locke stand in the place of Mr. Berry and Mr. Fulenwider in their official capacities, but Mr. Berry and Mr. Fulenwider remain Defendants as to the claims made against them in their individual capacity.

and continuous care than is available from a visiting nurse or routinely provided by the nursing staff of the hospital or skilled nursing facility." (*Id.* ¶¶ 74–75 (quoting 42 C.F.R. § 440.80).) The Plaintiffs allege that after CMS approved the ICWP Renewal Application on May 2, 2017, the Defendants failed to make the new Skilled Nursing Hourly services available with the promptness required by law. (*Id.* ¶¶ 87–89.) The Plaintiffs claim that they were evaluated for ICWP services after May 2, 2017 and were neither informed of nor assessed for Skilled Nursing Hourly services. (*Id.* ¶¶ 100, 104, 111, 115.) As a result, the Plaintiffs allege that the Trusts were required to pay for similar services not covered by Medicaid, which reduced the amount of funds available to them for other services. (*Id.* ¶¶ 144–45.) Given these events, the Plaintiffs claim that the Defendants violated § 1396a(a)(3) and (a)(8) by failing to deliver Skilled Nursing Hourly services with reasonable promptness and failing to furnish the Plaintiffs with the opportunity to apply or notice of their rights to a fair hearing for a claim not acted upon promptly. (Second Am. Compl., Counts I & II). The Plaintiffs further allege a violation of their Fourteenth Amendment Due Process Rights as a result of the Defendants' alleged failure to provide them with adequate notice under §1396a(a)(3). (*Id.*, Count 3.) Plaintiffs seek compensatory damages, injunctive relief, and attorneys' fees for these alleged violations of the Medicaid Act and the Fourteenth Amendment. In response, the Defendants filed and Answer and Counterclaim, seeking attorneys' fees under 42 U.S.C. § 1988. (Defs.' Answer & Counterclaim, at 46–47.)

## II.     Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III.    Discussion

Before evaluating the Defendants' arguments, the Court must begin with two issues raised by the Plaintiffs' filings. First, the Counts enumerated

in the Plaintiffs' Second Amended Complaint require some clarification. Count I alleges a violation of 42 U.S.C. § 1396a(a)(8) "enforceable under 42 U.S.C. § 1983." (Second Am. Compl. ¶¶ 134–35.) Count II alleges a violation of 42 U.S.C. § 1396a(a)(3). (*Id.* ¶¶ 148–54.) Count III alleges a violation of the Plaintiffs' Fourteenth Amendment rights to due process. (*Id.* ¶¶ 156–160.) As a final substantive claim, the Plaintiffs raise a § 1983 claim, alleging "the deprivation of their rights protected by the Medicaid Act and the U.S. Constitution." (*Id.* ¶ 165.) These Counts create a somewhat confusing patchwork of overlapping and duplicative claims. Count I alleges a violation of § 1983 by identifying the alleged enforceable right provided by 42 U.S.C. § 1396a(a)(8), and thus any claim seeking the same relief in Count IV is dismissed as duplicative. Counts II and III do not reference § 1983, but the Plaintiffs' briefing appears to confirm that these claims are proceedings under § 1983. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 4.). Thus, the Court views Count II and III as stating § 1983 claims for violations of 42 U.S.C. § 1396a(a)(3) and the Fourteenth Amendment, respectively. Count IV is therefore dismissed as duplicative of Counts I, II, and III. Count V, a claim for attorneys' fees, will proceed as long as substantive claims remain.

Second, the Plaintiffs argue in their briefing that the Defendants' decision to file an answer before their Renewed Motion to Dismiss renders the instant Motion improper under Federal Rule of Civil Procedure 12(b). Rule 12(b) states that any motion asserting a defense identified in the Rule "must

be made before pleading if a responsive pleading is allowed." The Plaintiffs note that the Defendants filed an Answer and Counterclaim on August 9, 2021, and their Renewed Motion to Dismiss on October 1, 2021. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 2.) The Plaintiffs also point to *Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002), in which the Eleventh Circuit described a motion to dismiss filed after an answer as "inappropriate." In response, the Defendants argue that the specific posture of this case allows for such a filing, as their previous Motion to Dismiss was still pending before the Court when they filed their Answer to the Second Amended Complaint, and the Court previously granted them until October 1, 2021 to refile their Motion to Dismiss. (Defs.' Reply Br. in Supp. of Defs.' Mot. to Dismiss, as 2–3.) In their Surreply, the Plaintiffs argue that by filing their Second Amended Complaint, they mooted the Defendants' previous Motion to Dismiss, and the Defendants were required to refile their Motion to Dismiss before filing a new responsive pleading. (Pls.' Surreply in Opp'n to Defs.' Mot. to Dismiss, at 1–2.)

Generally, courts do not interpret these provisions of Rule 12(b) as strictly as the Plaintiffs suggest here. *See* Wright & Miller, 5C Fed. Prac. & Proc. § 1361. Furthermore, the Eleventh Circuit's decision in *Skrtich* appears to rest upon the specifics of the case rather than a commitment to a strict interpretation of Rule 12(b)'s timing provisions.[2] Before his elevation to the

---

[2] In *Skrtich*, "the motion to dismiss asserting qualified immunity was filed more than three months after the defendants' answer had been filed and

7

Eleventh Circuit, Judge Brasher detailed this issue at length, noting that "[a] district court can use its discretion to promote judicial economy[,]" especially where a defendant could make identical arguments under a Rule 12(c) motion. *Green v. Henry Cty. Comm'n*, 2020 WL 974388, at *3 (M.D. Ala. Feb. 28, 2020). Finally, while an amended complaint renders a motion to dismiss moot, the denial of that motion on mootness grounds still requires an order to that effect. Without any apparent gamesmanship, abuse of court proceedings, or prejudice to the Plaintiffs, the Court exercises its discretion to reach the merits of the Defendants' Renewed Motion to Dismiss.

In their Renewed Motion to Dismiss, the Defendants make several arguments against the Plaintiffs' claims. First, the Defendants argue that the Plaintiffs have no enforceable federal rights to particular ICWP services that had been approved by CMS but not yet offered by DCH. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 11–21.) In particular, the Defendants argue at length the Plaintiffs' Medicaid Act claims fail to satisfy the framework handed down by the Supreme Court in *Blessing v. Freestone*, 520 U.S. 329 (1997) and clarified by *Gonzaga University v. Doe*, 536 U.S. 273 (2002). (*Id.* at 17–21.) Second, the Defendants argue that the doctrines of sovereign immunity and qualified immunity bar the Plaintiffs' claims against the Defendants in their

---

after two prior motions to dismiss, both of which had omitted this defense and both of which had been denied." 280 F.3d at 1306. The Panel went on to find that the defendants had abused the pretrial process through tactics aimed at delaying the proceedings. *Id.*

official and personal capacities. (*Id.* at 21–31.) Third, the Defendants make several arguments that the Plaintiffs' Second Amended Complaint fails to state a claim upon which relief can be granted. (*Id.* at 31–37.)[3] Finally, the Defendants argue that the Plaintiffs lack standing to pursue claims for compensatory damages on behalf of the Trusts. (*Id.* at 38–39.) In response, the Plaintiffs contest the Defendants' application of the *Blessing* framework, arguing that they have shown an enforceable federal right exists under the Medicaid Act and the Fourteenth Amendment. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 6–13.) Further, they claim that these actions are ongoing and violative of clearly established rights, thus eluding the effect of sovereign immunity and qualified immunity. (*Id.* at 13–23.) The Plaintiffs also present counterarguments to the Defendants' claims that they have neither stated a claim nor have standing to pursue compensatory damages on behalf of the Trusts. (*Id.* at 23–30.)

---

[3] One of the Defendants' arguments here is that the Plaintiffs fail to sufficiently allege the personal involvement of the Defendants. (Defs.' Br. in Supp. of Defs. Mot. to Dismiss, at 33–34.) A review of the Plaintiffs' Claims for Relief reveals two violations of the Eleventh Circuit's prohibition on shotgun pleadings: each count adopts the allegations of the preceding counts, and each count asserts claims against multiple Defendants without specifying which actions were taken by each Defendant. *See Barmapov v. Amuial*, 986 F.3d 1321, 1324–25 (11th Cir. 2021) (describing the four types of shotgun pleadings). These violations make the exact allegations against each Defendant difficult to discern. Typically, the remedy for shotgun pleadings is dismissal without prejudice. However, as the analysis below indicates, a Third Amended Complaint would be futile. In the interest of judicial economy, the Court reaches the merits of the Plaintiffs' claims here.

The threshold question here—whether the Medicaid Act creates enforceable federal rights as to services approved by CMS but not yet implemented by a state's agency—appears to be an issue of first impression. As the Parties detail, the Eleventh Circuit has previously held that there exists "a federal right to reasonably prompt provision of assistance under section 1396a(a)(8) of the Medicaid Act, and that this right is enforceable under section 1983." *Does 1–13 By and Through Doe, Sr. 1–13 v. Chiles*, 136 F.3d 709, 719 (11th Cir. 1998). However, that case involved services that were already offered to other Medicaid recipients, and the plaintiffs in *Chiles* argued that they had spent too long on a waiting list to receive these services. *Id.* at 711. Whether the *Chiles* analysis extends to a service such as Skilled Nursing Hourly, which was approved but not yet implemented at the time of their initial application for ICWP services, presents a close question of law. However, assuming *arguendo* that such a right does exist under *Blessing*, the Plaintiffs claims cannot elude the doctrines of sovereign immunity and qualified immunity. As a result, the Plaintiffs' claims fail.

### a. Sovereign Immunity

The Court begins with the Defendants' contention that the Eleventh Amendment bars claims against the Defendants in their official capacities. The Eleventh Amendment reads:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or

by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI. Generally, the Amendment "bars a citizen from suing his state . . . unless the state waives its sovereign immunity or Congress abrogates that immunity under § 5 of the Fourteenth Amendment." *Attwood v. Clemons*, 818 F. App'x 863, 866 (11th Cir. 2020). However, one exception to this bar is the *Ex parte Young* doctrine, which "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). "In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Svc. Com'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted). Importantly, the plaintiff seeking to avoid the Eleventh Amendment bar need not prove a violation of federal law: "An allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction." *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 281 (1997).

Because they seek injunctive and declaratory relief against the Defendants in their official capacities, the Plaintiffs must find shelter in the *Ex parte Young* doctrine for their claims to proceed. While the doctrine

11

generally does not prohibit suits seeking prospective injunctive and declaratory relief, "the doctrine is not without limitations—indeed, two are relevant to this [case]." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999).

> First, the *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law. In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct. . . . Second, in *Idaho v. Coeur d'Alene Tribe*, the Supreme Court recently said that the *Ex parte Young* doctrine does not apply where the equitable relief sought "implicates special sovereignty interests." Thus, if prospective relief would invade a state's sovereignty as much as an award of money damages would, the action will be barred by the Eleventh Amendment.

*Id.* (internal citations omitted). The Defendants suggest that both of these limitations apply. First, the Defendants argue that if the "Plaintiffs' requested injunction is granted, the only action Defendants will be required to take is to pay for private duty nursing for Plaintiffs in their homes, past and future." (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 25.) In this way, the Defendants suggest this action is functionally one for money damages and thus barred by the Eleventh Amendment. (*Id.* at 24.) Second, in a footnote, the Defendants claim that the Plaintiffs' equitable claims are moot as the "Plaintiffs have both been assessed for and began receiving the new services they demand in this action." (*Id.* at 25 n.6.) In response, the Plaintiffs argue that they "have alleged a proper *Ex [p]arte Young* claim for violations of the Fair Hearing provision of the Medicaid Act, 42 U.S.C. § 1396a(a)(3), and the Due Process Clause of the Fourteenth Amendment." (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 14–

12

15.) They point to allegations that the Defendants continue to send inadequate notices to the Plaintiffs regarding ICWP services, and these ongoing actions support an *Ex parte Young* action. (*Id.* at 15.) In their Reply Brief, the Defendants claim that the Plaintiffs have failed to demonstrate that the notices violate either the Medicaid Act or the Fourteenth Amendment's Due Process Clause. (Defs.' Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 13–14.)

Regardless of the Plaintiffs' efforts to describe an ongoing violation of both 42 U.S.C. § 1396a(a)(3) and the Fourteenth Amendment in their Opposition Brief describes, the Second Amended Complaint fails to make such an allegation. Section 1396a(a)(3) requires states to "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." As a result, § 1396a(a)(3) appears to only apply to adverse actions—or in some cases, inaction—taken by state agencies with regards to Medicaid beneficiaries. This reading aligns with Counts II and III of the Plaintiffs' Second Amended Complaint, which fault the Defendants for "failing to provide timely and adequate notice of their actions or decisions regarding Plaintiffs' ICWP services." (Second Am. Compl. ¶¶ 152, 159.) But because the Plaintiffs now receive the requested services, these allegedly deficient notices are, at most, past violations of federal law. (*See id.* ¶ 151 ("The requirements for adequate notice of adverse actions prior to the denial, termination or reduction of a beneficiary's Medicaid benefits [were] clearly

established law under the Medicaid Act at the time of the violation of the Plaintiffs' due process rights alleged herein."); *see also id.* ¶ 158 ("The requirements for adequate notice of adverse actions prior to the denial, termination or reduction of a beneficiary's Medicaid benefits [were] clearly established law under the U.S. Constitution at the time of the violation of the Plaintiffs' due process rights alleged herein.").) Though the Plaintiffs allege that they still receive notices "of prior approval decisions" that do "not state in plain language what the notice is regarding or why [the Plaintiffs] received it[,]" these notices are not required by § 1396a(a)(3), which applies only claim denials or inaction. (*Id.* ¶¶ 124–25.) As a result, the Plaintiffs cannot bootstrap claims regarding prior approvals onto claims that previous adverse action notices were inadequate. Because the Second Amended Complaint does not make an allegation of an ongoing violation of federal law, the Plaintiffs' claims for injunctive and declaratory relief against the Defendants in their official capacities are barred by the Eleventh Amendment.

### b.  Qualified Immunity

Qualified immunity shields government officials acting in their discretionary authority from individual capacity suits unless they violate a plaintiff's clearly established constitutional or statutory rights. *Charles v. Johnson*, 18 F.4th 686, 698 (11th Cir. 2021). Officials "who act within their discretionary authority are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the

14

unlawfulness of their conduct was clearly established at the time." *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020) (internal quotation marks omitted). The Plaintiffs do not contest the fact that the Defendants were acting within their discretionary authority at all times relevant here. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 17.) Thus, the burden flips to the Plaintiffs to demonstrate a violation of a clearly established statutory or constitutional right. *Charles*, 18 F.4th at 698. "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (internal quotation marks omitted); *see also Charles*, 18 F.4th at 698 ("The essential question [in qualified immunity cases] is whether the officer had 'fair warning' that his actions were unconstitutional.")

The Defendants argue that this burden is insurmountable for the Plaintiffs, as "there is insufficient guidance in this Circuit to allow a like-situated, reasonable government agent to know that any of the facts asserted by Plaintiffs, even if true, amount to violations of federal law." (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 30.) They point to the distinction between a newly approved service and an existing one, arguing that it is not certain that the "reasonable promptness" standard that applies to the latter also applies to the former. In response, the Plaintiffs argue that the language of the Medicaid Act is "specific enough to establish clearly that Defendants are required to

15

provide medical assistance . . . with reasonable promptness." (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 19.) In particular, the Plaintiffs cite certain regulations that set time limits on eligibility determinations and argue that the Defendants were required "to furnish Medicaid promptly to recipients without any delays caused by the agency's administrative procedures[.]" (*Id.*; *see also* 42 C.F.R. §§ 435.912 & 435.930. The Plaintiffs further rely on the *Chiles* decision to bolster its argument that their right to reasonably prompt medical assistance was clearly established. (*Id.*) In their Reply Brief[4], the Defendants argue that these regulations are inapposite in this context and do not "require a state agency to ramp up and begin providing an entirely new service in Medicaid within those timeframes." (Defs.' Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 8.)

Ultimately, the Plaintiffs fail to demonstrate that the Defendants' actions constituted violations of clearly established law under the Medicaid Act and the Due Process Clause of the Fourteenth Amendment. As the Plaintiffs noted in their Opposition Brief, courts "do not require a case directly on point,

---

[4] This Court's Local Rules limit Reply Briefs to 15 pages absent leave of the Court. N.D. Ga. Local R. 7.1(D). The Defendants did not seek leave to file excess pages as to their Reply Brief, and thus their Reply Brief violates the Local Rules. The Plaintiffs did not object to this violation in their Motion for Leave to File Surreply or in the Surreply itself. As such, in the Court's discretion, the Court will accept the additional pages but caution the Parties against subsequent violations of Local Rule 7.1 and all other relevant Rules. *See* N.D. Ga. Local R. 7.1(F) (granting the Court discretion in managing noncompliant motions and briefs).

but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Neither the cases nor the regulations cited by the Plaintiffs clearly establish the federal rights claimed by the Plaintiffs. The Court begins with the *Chiles* decision. As referenced above, the Eleventh Circuit's decision in that case clearly established "a federal right to reasonably prompt provision of assistance under section 1396a(a)(8) of the Medicaid Act, and that this right is enforceable under section 1983." 136 F.3d at 719. However, to clearly establish the violation of the federal right here, the facts of the case require consideration. In *Chiles*, the plaintiffs were Medicaid-eligible individuals with developmental disabilities "who had been placed on waiting lists for entry into intermediate care facilities for the developmentally disabled ("ICF/DD" or "ICF/MR")[.]" *Id.* at 711. The state defendants in that case did not dispute that significant delays caused several years of waits among the plaintiffs. *Id.* These services, like the Skilled Nursing Hourly service, were not required by federal law. *Id.* at 714. However, the Court's discussion reveals that, unlike Skilled Nursing Hourly services, ICF/DD and ICF/MR services were being provided to some eligible individuals. There is no discussion of these services being instituted recently, and a footnote reveals that some plaintiffs had been on a waiting list for treatment for nearly a decade. *Id.* at 722 n.23.

This distinction is crucial. Provision of services and implementation of services are two different actions and responsibilities of state agencies. It is

17

not clear from *Chiles* that this reasonable promptness standard applies to the design and implementation of services approved by CMS, as there is no discussion that cautions state agencies and officials that services approved by CMS must be designed and implemented with reasonable promptness. And even if that standard does apply to the implementation of new services, there is nothing in *Chiles* or any other case law that give the Defendants fair warning that their timeline was unlawful under § 1396a(a)(8). Thus, even if you assume that a federal right exists to the reasonably prompt implementation and provision of new Medicaid services and that the Defendants' timeline violated this standard, the Plaintiffs have failed to demonstrate that these actions violated clearly established law in this Circuit. As a result, the Defendants are entitled to qualified immunity as to the Plaintiffs' § 1396a(a)(8) "reasonable promptness" claim.

The remaining claims against the Defendants—the § 1396a(a)(8) "Opportunity to Apply" claim, the § 1396a(a)(3) claim, and Fourteenth Amendment claim—fail for similar reasons. Unlike the "reasonable promptness" claim discussed above, there is no precedent even suggesting that these rights are clearly established. Instead, the Plaintiffs rely on the text of the statutes and their implementing regulations, arguing that any reasonable official would know that their actions and inaction violated clearly established law. However, the Plaintiffs fail to provide a response to the Defendants' claimed distinction between services already offered by state agencies and

those approved by CMS but not yet implemented. This distinction is an important one and renders the law on this topic less than clearly established for each of the Plaintiffs' remaining claims. Regarding their § 1396a(a)(8) "opportunity to apply" and § 1396a(a)(3) notice claims, the plain text of the statutes does not address the Defendants' alleged ambiguity that "there can be no clear right to notice or an opportunity to apply for optional services in Medicaid that the state has not yet implemented or offered." (Defs.' Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 9.) With regards to their Due Process claim, the Plaintiffs argue that clearly established law requires notice and a fair hearing before any termination of benefits. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 23.) But as discussed above, the Defendants' alleged actions and inactions did not result in a termination of any benefits, and thus it is not clear that the Plaintiffs' allegations describe a violation of a clearly established law under the Fourteenth Amendment. Without any case law to bolster their claims regarding the supposed clarity of the statutes and regulations here, the Plaintiffs have failed to satisfy their burden of alleging violations of clearly established law in Counts I, II, and III. As a result, the Defendants are entitled to qualified immunity as to the Plaintiffs' claims against them in their individual capacities.

Because the Plaintiffs' claims against the Defendants in both their official and individual capacities are barred, the claims fail in their entirety. As a result, they are not the prevailing party, and the Plaintiffs' derivative

claim for attorneys' fees under 42 U.S.C. § 1988 (Count V) also fails. The Defendants' Counterclaim under § 1988 is the sole remaining claim in this case. (*See* Defs.' Answer & Counterclaim, at 46–47.)

## IV.    Conclusion

For the reasons set forth above, the Defendants' Renewed Motion to Dismiss the Plaintiffs' Second Amended Complaint [Doc. 101] is GRANTED. The Plaintiffs' claims are dismissed with prejudice. As a result, the Parties' Joint Motion for Extension of Time to Complete Discovery [Doc. 119] is DENIED as moot.

SO ORDERED, this   24th   day of January, 2022.

THOMAS W. THRASH, JR.
United States District Judge